# AUSBAND & DUMONT

ATTORNEYS AT LAW

TOWER PLACE
SUITE 1800
3340 PEACHTREE ROAD, N.E.
ATLANTA, GEORGIA 30326
TELEPHONE: 404/812-0051

825 FAIRWAYS COURT, SUITE 300
STOCKBRIDGE, GEORGIA 30281
TELEPHONE: 678/593-3000
TELEFAX: 678/593-3015

REPLY TO: STOCKBRIDGE ADDRESS

ANDREW C. AUSBAND
DOUGLAS C. DUMONT
KATHRYN W. CARPENTER

ANDYAUSBAND@AUSBANDLAW.COM
DOUGDUMONT@AUSBANDLAW.COM
KCARPENTER@AUSBANDLAW.COM

October 13, 2020

Mr. Grant B. Smith, Esq.                                    *Via Federal Express*
Mr. Nicholas D. Bedford, Esq.
Dennis, Corry, Smith & Dixon, LLP
900 Circle 75 Parkway, Suite 1400
Atlanta, GA 30339

RE:   Pauline DeMarco and Joseph DeMarco v. Shoazim Rakmanov, Trucking Experts, LLC, Ryder Integrated Logistics, Inc., Am Trans Expedite, LLC, National Liability & Fire Insurance Company, Old Republic Insurance Company, and Ace American Insurance Company
Fulton County State Court
Civil Action #: 20EV005210
**Policy Limits Demand on Behalf of Pauline DeMarco and Joseph DeMarco Pursuant to Southern General Insurance Company v. Holt**

Dear Mr. Smith and Mr. Bedford:

This firm represents Pauline DeMarco and Joseph DeMarco in connection with their claims for damages, resulting from a motor vehicle collision, which occurred on or about October 13, 2018, involving your insured's driver, Shoazim Rakmanov. Please direct all communications regarding this matter to me.

This letter is sent in a good faith effort to resolve all outstanding claims. Because this letter and all documents attached hereto are submitted in furtherance of ongoing good faith settlement and compromise negotiations, any statements made in connection herewith are inadmissible against my clients at any future hearing or trial of this matter pursuant to O.C.G.A. § 24-4-408(b).

## FACTS

At the time of the wreck, Mr. DeMarco and Mrs. DeMarco are traveling southbound on I-285 in the second lane of travel in Fulton County, Georgia. At the same time, Mr. Rakmanov is traveling on I-285 in the third lane of travel. Mr. Rakmanov crosses into Mr. DeMarco's lane of travel, and

**EXHIBIT B**

Page 2

crashes into the DeMarcos. Upon impact, the DeMarcos' airbags deployed. Mrs. DeMarco complains on scene of burns and contusion from the airbags and seatbelt. Mrs. DeMarco also struck the side of her head/her ear and lost one of her hearing aids.

Mr. Rakmanov was found at fault and cited for failure to maintain lane, in violation of O.C.G.A. §40-6-48.

A copy of the police report is enclosed for your review. Photographs of the damage to the Demarco's vehicle are shown below.







## PAULINE DEMARCO'S DAMAGES

### Medical Treatment and Expenses

Mrs. DeMarco immediately suffers from neck pain, head pain, ear pain, and chest pain, so

Page 4

she goes to the emergency room at Piedmont Fayette Hospital. At Piedmont Fayette, Mrs. DeMarco is examined, and tests including x-rays, CT scans, and an EKG are taken. Mrs. DeMarco is diagnosed with, and treated for, a displaced cervical fracture, contusions, and an ear injury. Mrs. DeMarco is discharged the following day with a prescription for Oxycodone and Motrin, along with follow up instructions.

Mrs. DeMarco follows up with her PCP, Dr. Dupre at Piedmont Fayette Physicians. Mrs. DeMarco informs Dr. Dupre she suffers from increasing chest pain with tenderness and numbness and tingling in her right hand. Mrs. DeMarco is referred to an orthopedic surgeon and a neurologist. She is also instructed to get a left breast ultrasound due to the severe chest bruising.

On October 18, 2018, Mrs. DeMarco follows up with Dr. Lisa Sims, DNP, FNP-C, at Regenerative Ortho and Spine. Mrs. DeMarco informs Dr. Sims her neck pain and bilateral shoulder pain are constant with stiffness, and limited range of motion. Mrs. DeMarco also states she lost consciousness at the time of the wreck. Dr. Sims reviews Mrs. DeMarco's x-rays, which reveal a C6-C7 transverse process fracture. Mrs. DeMarco is placed in a soft cervical collar and Dr. Sims orders MRIs.

On October 23, 2018, Mrs. DeMarco undergoes left and right shoulder, and cervical MRIs. The cervical MRI reveals multileveled bulging discs at C3-C4, C4-C5, and C6-C7. The left shoulder MRI reveals a partial-thickness tear of the supraspinatus tendon, subacromial subdeltoid bursitis, and joint effusion. The right shoulder MRI reveals a full-thickness tear involving the anterior and mid substance attaching supraspinatus tendon fibers, and focal full-thickness perforation of the attaching tendon.

Mrs. DeMarco follows up with Dr. Ashley at Restoration Neurology on October 24, 2018. Mrs. DeMarco informs Dr. Ashley she has experienced memory loss and increased irritability since the wreck. Mrs. DeMarco is prescribed Gabapentin and Zoloft for her injuries and symptoms. Dr. Ashley orders a brain MRI with DTI.

Mrs. DeMarco undergoes a left breast ultrasound on November 1, 2018 at Women's Health Imaging. The ultrasound reveals palpable abnormalities.

When Mrs. DeMarco follows up at Regenerative to discuss her MRI results, she undergoes bilateral shoulder cortisone injections. Dr. Sims refers Mrs. DeMarco to follow up with Dr. Rayappa regarding her bilateral shoulder tears, and she is referred to physical therapy.

On November 13, 2018, Mrs. DeMarco follows up with Dr. Rayappa at Regenerative Ortho & Spine. Dr. Rayappa reviews Mrs. DeMarco's MRIs. Mrs. DeMarco reports her pain as debilitating. Dr. Rayappa is concerned that Mrs. DeMarco's rotator cuff tear will cause further tendon tearing and retraction. Mrs. DeMarco is scheduled for right shoulder arthroscopic surgery.

Mrs. DeMarco begins the physical therapy at Piedmont Fayette Rehab. The therapy includes, but is not limited to, therapeutic activities, therapeutic exercises, neuromuscular re-education, and manual therapy.

Page 5

On November 15, 2018, Mrs. DeMarco undergoes a brain MRI and diffusion tension imaging at American Health Imaging. Both are within normal range for Mrs. DeMarco's age.

Mrs. DeMarco follows up with Dr. Ashley after the brain MRI with DTI. Mrs. DeMarco undergoes CNS Vital Signs Battery testing. Mrs. DeMarco tests positive for visual memory impairment, as well as mild anxiety and depression. Dr. Ashley notes these are consistent with post-concussive syndrome.

On November 28, 2018, Mrs. DeMarco follows up with Dr. Sims at Regenerative Ortho regarding her ongoing cervical pain and injuries. Mrs. DeMarco is instructed to continue the physical therapy.

Mrs. DeMarco follows up with Dr. Ashley to discuss her ongoing memory loss and headaches. Mrs. DeMarco reports continued memory loss, so Dr. Ashley prescribes her Aricept. Over the next few weeks, the Aricept helps Mrs. DeMarco's memory loss and symptoms. Once Mrs. DeMarco feels comfortable with her memory, Dr. Ashley discontinues its use and discharges Mrs. DeMarco from her care.

On February 28, 2019, Mrs. DeMarco undergoes right shoulder arthroscopy rotator cuff repair and subacromial decompression, labral debridement, and arthroscopic biceps tenotomy at Piedmont Henry Hospital. The surgery is performed under general anesthesia.

Mrs. DeMarco begins post-op physical therapy at Regenerative Ortho on March 19, 2019. The therapy includes, but is not limited to, therapeutic activities, neuromuscular re-education, and manual therapy techniques.

On April 1, 2019, Mrs. DeMarco follows up with Dr. Ploska to further treat her cervical injuries. At this time, Mrs. DeMarco continues to have tenderness and radiating symptoms. Mrs. DeMarco is diagnosed with a C5-C6 herniated disc with severe foraminal stenosis. Dr. Ploska notes Mrs. DeMarco will warrant a C5-C6 ACDF surgery.

After a few additional weeks of physical therapy, Mrs. DeMarco's cervical pain persists. Therefore, Dr. Ploska refers her to Dr. Musser for possible epidural steroid injection.

On June 10, 2019, Mrs. DeMarco follows up with Dr. Musser at Regenerative. After a thorough examination, Dr. Musser believes Mrs. DeMarco is a good candidate for cervical ESI at C6-C7.

On June 24, 2019, Mrs. DeMarco undergoes a cervical interlaminar epidural steroid injection under fluoroscopic guidance. When Mrs. DeMarco follows up with Dr. Musser on July 8, 2019, she reports 90% relief of her cervical pain.

After Mrs. DeMarco is released from therapy, she follows up with Dr. Rayappa. Unfortunately, Mrs. DeMarco's right shoulder pain has returned. Mrs. DeMarco also follows up with Dr. Ploska regarding her cervical injuries. Dr. Ploska informs Mrs. DeMarco she will warrant cervical surgery, but due to some unrelated health problems, she will need to postpone the surgery

Page 6

for a few months.

Despite surgery and several months of post-op physical therapy, Dr. Rayappa orders a right shoulder MRI due to her ongoing right shoulder pain and symptoms.

On March 20, 2020, Mrs. DeMarco undergoes a right shoulder MRI at Regenerative Ortho. The MRI reveals moderate to severe AC arthrosis and subacromial/subdeltoid bursitis. When Mrs. DeMarco follows up with Dr. Rayappa, he informs her that she may still be symptomatic from the tenotomy at the time of her surgery. If Mrs. DeMarco continues to have pain and symptoms, she may require an additional surgery to include open biceps tenodesis.

Mrs. DeMarco's medical treatment is ongoing, and her pain has not resolved. Mrs. DeMarco's medical bills for the treatment she received so far as a result of the wreck are as follows:

| Provider | Amount |
|---|---|
| Piedmont Fayette Hospital | $27,292.54 |
| Atlantic Cod ER Physicians | $1,615.00 |
| Piedmont South Imaging | $1,742.06 |
| Piedmont Fayette Physicians | $632.00 |
| Regenerative Ortho & Spine | $56,730.40 |
| ROSI Surgery Center | $6,030.00 |
| Northside Radiology Assts. | $955.00 |
| Restoration Neurology | $4,950.00 |
| Women's Imaging Center | $930.00 |
| Fayette Professional Center for PT | $9,769.06 |
| American Health Imaging | $5,225.00 |
| Piedmont Henry for Surgery | $43,637.04 |
| Henry Anesthesia | $3,528.00 |
| **PREV. TREATMENT TOTAL** | **$163,036.10** |
| ACDF SURGERY ESTIMATE | $145,000.00 |
| **TOTAL** | **$308,036.10** |

Copies of the medical bills and records are enclosed for your review.

## JOSEPH DEMARCO'S DAMAGES

**Medical Treatment and Expenses**

Following the wreck, Mr. DeMarco suffers from shoulder pain, neck pain, and lower back pain; therefore, he goes to the emergency room at Piedmont Fayette Hospital. At Piedmont Fayette, Mr. DeMarco is examined, and tests including x-rays and CT scans are performed. Mr. is DeMarco diagnosed with, and treated for, a left shoulder strain, a cervical strain, and contusions. He is discharged with follow up instructions, along with a prescription for Tramadol.

Mr. DeMarco follows up with Dr. Lisa Sims, DNP-FNP-C at Regenerative Ortho and Spine. Mr. DeMarco informs Dr. Sims he suffers from constant and increasing left shoulder pain and neck pain. After a thorough examination, Dr. Sims orders cervical, lumbar, and left and right shoulder MRIs. Mr. DeMarco is also placed in a soft cervical collar, and he is instructed to continue to wear his shoulder sling.

On October 30, 2018, Mr. DeMarco follows up with Dr. Rayappa at Regenerative regarding his left hip pain and low back pain. Mr. DeMarco reports his low back pain radiates into his left buttock and down his left leg. Dr. Rayappa orders a lumbar MRI.

On November 2, 2018, Mr. DeMarco undergoes cervical, left and right shoulder, and lumbar MRIs at Regenerative. The cervical MRI reveals herniated discs at C3-C4 and C4-C5. The left shoulder MRI reveals extensive labral tearing involving all four labral quadrants. The right shoulder MRI reveals glenohumeral joint effusion, rotator cuff tendinopathy, and biceps tendon tendinopathy. The lumbar MRI reveals a posterior disc bulge at L5-S1.

After the MRIs, Mr. DeMarco follows up at Regenerative. At this time, Mr. DeMarco also suffers from left knee pain with swelling. Dr. Rayappa discusses the MRI findings, and he refers Mr. DeMarco to physical therapy.

Mr. DeMarco begins the physical therapy at Piedmont Fayette Rehab. The physical therapy includes, but is not limited to, therapeutic exercises, modalities, neuromuscular re-education, heat and ice, and gait training.

When Mr. DeMarco follows up with Dr. Rayappa on December 3, 2018, he informs Dr. Rayappa the physical therapy is helping his pain. Mr. DeMarco is advised to continue with therapy.

Mr. DeMarco follows up with Dr. Rayappa once he completes the physical therapy. Mr. DeMarco reports good relief from his pain and symptoms. Mr. DeMarco is released from care with instructions to return if his pain returns.

Mr. DeMarco's medical bills for the treatment he received as a result of the wreck are as follows:

| | |
|---|---|
| Piedmont Fayette Hospital | $9,635.00 |
| Atlantic Cod ER Physicians | $1,485.00 |
| Piedmont South Imaging | $459.02 |
| Piedmont Fayette for PT | $9,004.06 |
| Regenerative Ortho & Spine | $15,253.00 |
| Northside Radiology Assts. | $1,292.00 |
| **TOTAL** | **$37,126.08** |

Copies of the medical bills and records are enclosed for your review.

## PAIN AND SUFFERING

Georgia law provides individuals who have been injured by the negligence of others are entitled to recover damages for pain and suffering over and above his or her out-of-pocket expenses. The amount of recovery is left to the enlightened conscience of the jury.

My clients have suffered a great deal of pain, discomfort, and inconvenience due to their injuries. They will present as very credible and likeable witnesses and will draw a great deal of sympathy from the jury. Consequently, if this matter goes to trial, they should recover substantial sums for their pain and suffering.

## SETTLEMENT DEMAND AND DISCUSSION OF GEORGIA BAD FAITH LAW

It has been my experience through a lengthy career in trucking litigation that the discovery process never bodes well for trucking defendants. This is largely due to failed compliance with the extensive safety regulations set forth in the Federal Motor Carrier Safety Regulations. My clients are fully prepared to proceed to trial, if necessary, to be fully compensated for their injuries. However, in an effort to resolve this matter and move on with their lives, they are willing to negotiate fair and just settlements, if possible.

According to your response to our request for insurance coverage information pursuant to O.C.G.A. § 33-3-28, your insured maintained a liability policy with coverage limits of $1,000,000.00 for bodily injury claims. If this information is incorrect, please contact me immediately, as it is my intention to make a settlement demand for the entire policy limits, including any available excess coverage.

Assuming that the coverage information that we received is correct, my clients have authorized me to accept the policy limits of $1,000,000.00 as full and final settlement of their claims. This demand for settlement is made pursuant to *Southern General Insurance Company v. Holt*, 262 Ga. 267, 416 S.E. 2d 274 (1992).

Page 9

While you are aware of the obligations imposed upon insurers for bad faith failure to settle claims within the policy limits, your insured may not be. With this in mind, and knowing you will take the necessary steps to ensure your insured have received a copy of this correspondence, I will set forth the applicable law in this regard.

In view of the fact that the policy limits are less than the total amount of damages likely to be recovered against your insured if this case proceeds to litigation and trial, it is the insurer's duty to offer the policy limits to avoid endangering its insured's financial well-being. When there is a likelihood that damages in excess of the policy limits will be awarded, and the insurer has an opportunity to settle the case within its policy limits, it is clear that the insurer must act with the utmost good faith on behalf of its insured in attempting to dispose of the claim against him. The Georgia Court of Appeals has held:

> "As a professional in the defense of suits, [the insurer] must use a degree of skill commensurate with such professional standards. As the champion of the insured, [the insurer] must consider as paramount his interests, rather than its own, and may not gamble with his funds."

*United States Fidelity & Guaranty Co. v. Evans*, 116 Ga. App. 93, 95, 156 S.E.2d 809, 811, *quoting* 7A Appleman, Insurance Law and Practice 533, § 4711.

In a 1984 Georgia Supreme Court decision, Chief Justice Hill cited *Evans*, holding:

> "…where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limits of liability. The reason for this rule is that the insurer 'may not gamble' with the funds of its insured by refusing to settle within the policy limits."

*McCall v. USAA Ins. Co.*, 251 Ga. 869, 870, 310 S.E.2d 513, 514 (1984).

If the insurer should refuse to settle this claim, your insured will be unnecessarily exposed to liability above and beyond the policy limits. The insurer's failure to timely offer to tender policy limits would, therefore, constitute a breach of its duty to protect the interests of its insured. The Supreme Court of Georgia spoke of such a duty in *McCall* as follows: "[I]n defending against the claims of a person injured by the insured, the insurer's duty to protect the interest of the insured arises because the liability of the insured is not fully protected by the terms of the liability policy." 251 Ga. at 871, 310 S.E. 2d at 515.

In *Holt*, the Court of Appeals focused on the fact that the insured failed and refused to settle the claim within the policy limits, although liability was clear. Since *Holt*, however, the Georgia courts have gone even further and have suggested that a fiduciary relationship exists between a liability insurer and its insured. See *Thomas v. Atlanta Casualty Co.*, 253 Ga. App. 199, 558 S.E.2d

432 (2001). Furthermore, in the case of *Cotton States Mutual Ins. Co. v. Brightman,* 256 Ga. App. 451, 568 S.E.2d 498 (2002), the Court of Appeals found that an insurer may be held liable for bad faith damages, not only in cases where the insurer makes an absolutely groundless decision not to settle a claim involving clear liability, but also under a theory of ordinary negligence in cases where the issue of liability is not absolutely clear, but where the insurer is found to have breached the duties owed to protect its insured from excess liability. In *Brightman*, the Court of Appeals sent a strong message to insurers that negligent failure to settle claims within the policy limits can lead to substantial exposure for bad faith damages, even in cases where liability is disputed, the claimant's settlement demand is conditional, and the deadline for acceptance of the settlement demand imposed by the claimant is short and inflexible.

I see no purpose in holding this matter open for a protracted period of time, and I believe this settlement demand is the most appropriate and reasonable resolution of this claim.

**Please note, the following items must be fully and strictly complied with in order to accept this offer.**

This *Holt* demand shall remain open for a period of **thirty (30) days,** with the deadline and method of acceptance indicated below pursuant to O.C.G.A. § 9-11-67.1:

1) These are time sensitive demands. You have thirty (30) days from your receipt of this offer to accept it in writing to my attention at:

    **Ausband & Dumont**
    **825 Fairways Court, Suite 300**
    **Stockbridge, Georgia 30281**

2) This is a demand for a lump sum payment of $1,000,000.00, or the total of all available policy limits, whichever is greater;

3) This is a demand for a lump sum payment of $1,000,000.00 for settlement of Pauline DeMarco and Joseph DeMarco's claims. Payment may be tendered in cash or made payable to "Pauline DeMarco, Joseph DeMarco, and Ausband and Dumont, as their attorneys."

4) Our Tax ID # is 58-2237091. Payments should be sent to my attention at:

    **Ausband & Dumont**
    **825 Fairways Court, Suite 300**
    **Stockbridge, Georgia 30281**

Regardless of the form of payment, **this offer will not be deemed accepted unless payment is received within ten (10) days after your written acceptance of this offer to settle. Timely payment is an essential element of acceptance**. See, Grange Mut. Cas. Co. v. Woodard, 797 S.E.2d 814, 2017 WL 875034, at *7 (Ga. Mar. 6, 2017).

To be clear, verbal or written agreement to pay the demand is **not** acceptance, as the

Page 11

settlement funds must be actually delivered to the address stated above in a timely manner to be a valid acceptance;

5) These are demands for settlement of Pauline DeMarco and Joseph DeMarco's claims against Shoazim Rakmanov, Trucking Experts, LLC, and National Liability & Fire Insurance Company, arising out of the collision that occurred on October 13, 2018 in Fulton County, Georgia;

6) My clients will execute the enclosed **limited liability release** in favor of you and your insureds, Shoazim Rakmanov, Trucking Experts, LLC, and National Liability & Fire Insurance Company, arising out of the collision that occurred on October 13, 2018 in Fulton County, Georgia. **Please note: Any response that includes an alternate release will not be considered an acceptance**; and

7) National Liability & Fire Insurance Company must provide proof positive of the available coverage in place for this insured, as our intention is to demand the full policy limits in this case. Proof positive means a copy of the National Liability & Fire insurance policy and declarations page stating the amount of insurance available and providing the undersigned with a signed affidavit from an authorized agent of National Liability & Fire Insurance Company stating there is no other coverage available through National Liability & Fire that may provide coverage for this claim. **This offer will not be deemed accepted unless this affidavit is received in my Stockbridge office within ten (10) days after your written acceptance of this offer to settle**. Please sign and provide the attached affidavit as directed here.

**If there are any other claims or potential claims arising out of this occurrence that you contend affect your ability to settle this case and protect the assets of your insured, you must contact me immediately, but no later than the deadline stated above, to discuss appropriate allocation of the available policy limits.**

In addition, this demand for settlement is also made pursuant to Georgia's Unliquidated Damages Interest Act found at **O.C.G.A. § 51-12-14.** Your failure to accept the amount demanded within thirty (30) days of your receipt of this letter allows my clients to recover interest at the legal rate in the event the jury returns verdicts in excess of the amount demanded.

Please let me know if you require any additional information. I look forward to hearing from you soon.

Sincerely yours,

Douglas C. Dumont
For the Firm